**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Stephanie Lashawn Clark,<br><br>Plaintiff,<br><br>v.<br><br>Nancy A. Berryhill,<br>Acting Commissioner of Social Security,<br><br>Defendant. | No. CV-17-0191-TUC-BGM<br><br>**ORDER** |

Currently pending before the Court is Plaintiff's Opening Brief (Doc. 14). Defendant filed her Brief ("Response") (Doc. 15), and Plaintiff filed her Reply Brief ("Reply") (Doc. 16). Plaintiff brings this cause of action for review of the final decision of the Commissioner for Social Security pursuant to 42 U.S.C. § 405(g). Compl. (Doc. 1). The United States Magistrate Judge has received the written consent of both parties, and presides over this case pursuant to 28 U.S.C. § 636(c) and Rule 73, Federal Rules of Civil Procedure.

**I.  BACKGROUND**

*A.  Procedural History*

On November 16, 2012, Plaintiff filed a Title II application for Disability Insurance Benefits ("DIB") and Title XVI application for Supplemental Security Income ("SSI") alleging disability as of December 30, 2010. Administrative Record ("AR") at

23, 154. After proceeding through the normal administrative process, the Administrative Law Judge ("ALJ") issued his unfavorable decision, finding Plaintiff not disabled, on December 6, 2013. *Id.* at 23, 154–63. Plaintiff sought review, and on April 11, 2014, the Appeals Council remanded the matter back to the ALJ for further consideration of mental impairments. *Id.* at 23, 173. After a second hearing, on October 14, 2014, the ALJ again issued an unfavorable decision. *Id.* at 23, 173–86. Plaintiff again sought review, which was denied on January 16, 2015. *Id.* at 195–97. No further action was taken by Plaintiff until she began the process in this case.

On June 14, 2015, Plaintiff filed a Title XVI application for SSI alleging disability as of October 15, 2014 due to bilateral knee impairments, back impairments, post-traumatic stress disorder ("PTSD") with worsening agoraphobia, cognitive impairments, and Type II diabetes mellitus. *See* AR at 22, 25, 201–02, 206, 208, 220–21, 308, 343, 363, 366, 387. The Social Security Administration ("SSA") denied this application on February 18, 2016. *Id.* at 22, 201–19, 244–48. Plaintiff filed a request for reconsideration, and on July 1, 2016, SSA denied Plaintiff's application upon reconsideration. *Id.* at 22, 220–42, 249–53. On July 13, 2016, Plaintiff filed her request for hearing. *Id.* at 22, 254–67. On January 9, 2017, a hearing was held before Administrative Law Judge ("ALJ") Yasmin Elias. *Id.* at 22, 54–96. On February 13, 2017, the ALJ issued an unfavorable decision. AR at 19–46. On February 20, 2017, Plaintiff requested review of the ALJ's decision by the Appeals Council, and on April 12, 2017, review was denied. *Id.* at 1–5, 12–18, 459–66. On April 27, 2017, Plaintiff filed this cause of action. Compl. (Doc. 1).

### *B.* *Factual History*

Plaintiff was thirty-five (35) years old at the time of the administrative hearing, and thirty-three (33) at the time of the alleged onset of her disability. AR at 43, 100, 131, 208, 221, 307, 343, 363, 387. Plaintiff received a high school diploma, although she attended special education classes. *Id.* at 44, 68, 95, 132, 201, 206, 208, 220. Prior to her alleged disability, Plaintiff worked as a housekeeper, cashier, and a front desk clerk. *Id.*

at 43, 74, 77, 101–05.

### 1. Plaintiff's Testimony

At the administrative hearing, Plaintiff testified that she feels that she cannot work, because her PTSD triggers her traumatic brain injury and her mobility. AR at 62. Plaintiff further testified that she had knee surgery on her right knee twice. *Id*. at 63. Plaintiff stated that she walks with a cane, which was not prescribed by a doctor. *Id*. at 63. Plaintiff estimated that she can walk less than a block at one time. *Id.* Plaintiff stated that she also has trouble sitting, but adjusts because she would rather sit than stand. *Id.* at 64. Plaintiff testified that she cannot kneel, crouch, stoop or bend. AR at 64. Plaintiff further testified that if she drops something on the floor she has her son pick it up, or tries to "wiggle it up" with her cane. *Id.* Plaintiff stated that her back pain is on the left side and travels from back around her hip to the front. *Id.* Plaintiff further stated that she has difficulty balancing and walking. *Id*. at 65. Plaintiff testified that she has tendinitis and arthritis in her thumb on her right hand. *Id*. at 65.

Plaintiff further testified that she suffered a traumatic brain injury in a near drowning incident that occurred when she was three (3). AR at 66. Plaintiff also testified that she had received blows to the head in the course of an abusive relationship. *Id*. at 67–68. Plaintiff stated that she struggled through school, stayed in special education classes, and graduated with a low academic score. *Id*. at 68. Plaintiff also testified that she had difficulty with her previous Social Security application, because she struggled with the paperwork. *Id*. at 68–69. Plaintiff testified that if there is a lot of information on a form, she has trouble understanding the whole form. *Id*. at 69.

Plaintiff further testified that her knee was originally injured in an altercation with a Tucson police officer. AR at 69. Plaintiff also testified that she suffers significant PTSD from that event, as well as the abuse she had suffered in previous relationships. *Id*. at 69–70. Plaintiff stated that men, such as police officers, who appear to be loud and threatening trigger her PTSD, which makes her feel like leaving or running. *Id.* at 70. Plaintiff also stated that when her PTSD is triggered, she suffers symptoms such as a

racing heart, heaving breathing, and crying. *Id*. Plaintiff further testified that she began art therapy, but felt threatened by a male staff member. *Id.* at 70–71. Plaintiff also discussed her difficulty in maintaining services, which arose from her brother's untimely death at Arizona State Hospital. AR at 71–72.

Plaintiff testified that she lives with her 14-year-old son. *Id.* at 73. Plaintiff further testified that her last paid job was in housekeeping at Villa Maria. *Id.* at 74. Plaintiff also confirmed working at Motel 6 as a front desk clerk, as well as a cashier at AM PM. *Id.* at 76. Plaintiff stated that she was discharged from the Motel 6 position, because an audit showed that she had made multiple data entry mistakes. *Id.* at 77. Plaintiff testified that she is a daily medical marijuana user. AR at 77–79. Plaintiff noted that she also takes Wellbutrin for either her anxiety or depression. *Id.* at 79.

Plaintiff indicated that she has applied multiple times for social security. *Id.* at 75. Plaintiff was unclear regarding how many times she applied and the precise years of application; however, she confirmed two, possibly three prior applications. *Id.* at 75–76, 81–82.

### 2. Vocational Expert Cathleen Spencer's Testimony

Ms. Cathleen Spencer testified as a vocational expert at the administrative hearing. AR at 22, 83–94. Ms. Spencer confirmed that if her opinion conflicted with the Dictionary of Occupational Titles ("DOT"), she would alert the ALJ and Plaintiff to the conflict. *Id.* at 83. Ms. Spencer described Plaintiff's past work as a sales clerk as DOT number 290.477-014, Specific Vocational Preparation ("SVP") of 3, and light work. *Id.* at 85. Ms. Spencer described Plaintiff's past work as a cleaner, commercial or institutional, as DOT number 381.687-014, SVP 2, heavy work. *Id.* at 85–86. Ms. Spencer additionally included past work as a fast food worker, which Plaintiff indicated was at KFC. *Id.* at 85–86. Ms. Spencer described this work as DOT number 311.472-010, SVP 2, light work. AR at 86.

The ALJ asked Ms. Spencer about a hypothetical individual with the same age, education, and work experience as the Plaintiff. *Id.* The ALJ asked if such an individual

would be able to perform work at the medium exertion level with the additional limitations of "occasionally [climbing] ramps or stairs[;] never ladders, ropes or scaffolds[;] occasionally kneel, crawl and crouch[;] is able to understand and remember and carryout simple instructions and make simple work-related decisions[;] respond appropriately to supervision, coworkers and work situations[;] and deal with routine changes at work[,] [b]ut the work should not require beyond three to fifth grade level reading, writing and math[,] and the work should only have occasional superficial contact with coworkers and supervisors and non to minimal with the public[.]" *Id.* at 86–87. Ms. Spencer testified that such an individual would not be able to perform Plaintiff's past relevant work. *Id.* at 87. Ms. Spencer further testified that an individual with the hypothetical residual functioning capacity could perform work as a hand packager, DOT number 920.587-018, described as medium work, SVP 2, and 42,000 jobs available in the national economy. *Id.* Ms. Spencer also reported that an individual could perform work as a machine packager, DOT number 920.685-078 and described as medium work, SVP 2 with 30,000 jobs available in the national economy, as well as a cleaner II, DOT number 919.687-014, described as medium work, SVP 1, with 6,000 jobs available in the national economy. AR at 87.

The ALJ the asked Ms. Spencer regarding an individual with the same residual functional capacity as the first hypothetical, but who could only perform work at the light exertional level. *Id.* at 88. Ms. Spencer provided three (3) possible jobs that such an individual could perform, including: (1) housekeeping, DOT number 323.687-014, light work, SVP 2, with 135,000 jobs available in the national economy; (2) router, DOT number 222.587-038, light work, SVP 2, with 53,000 jobs available in the national economy; and (3) retail worker, DOT number 209.587-034, light work, SVP 2, with 292,000 jobs available in the national economy. *Id.*

The third hypothetical asked of Ms. Spencer by the ALJ included a hypothetical individual with the same residual functional capacity, but who could only perform sedentary work. *Id.* Ms. Spencer stated that such an individual could perform the work

of a document preparer, DOT number 249.587-018, which is sedentary work, with an SVP of 2, and 46,000 jobs available in the national economy. *Id.* Ms. Spencer also testified that such an individual could perform work as an addresser, DOT number 209.587-010, sedentary, SVP 2, and 6,000 jobs available in the national economy, as well as tube operator, DOT number 239.687-014, sedentary, SVP 2, with 3,000 jobs available in the national economy. *Id.* Ms. Spencer also confirmed that all of the sedentary jobs would allow an individual to alternate or move positions every thirty (30) minutes while remaining mostly sedentary in the position. *Id.* Ms. Spencer further testified that if the hypothetical individual was limited to frequent, as opposed to constant, handling and feeling with the non-dominant hand, the jobs would remain. *Id.*

In response to questioning by Plaintiff's counsel, Ms. Spencer testified that if the third hypothetical person could rarely reach or handle objects, the three sedentary jobs would be eliminated. AR at 89. Plaintiff's counsel further questioned Ms. Spencer regarding the third hypothetical person, with the additional limitation of needing to lie down outside of normal breaks for five (5) minutes at a time. *Id.* at 89–90. Ms. Spencer responded that no jobs existed for such an individual. *Id.* at 90. Plaintiff's counsel again questioned Ms. Spencer about the third hypothetical person and the alternating sitting and standing requirement. *Id.* Ms. Spencer stated that her opinion was based on contacting employers about requirements, and as long as the individual is on task during the adjustment, that such movement was tolerable in the labor market. *Id.* at 90–91. Ms. Spencer further opined that this was consistent with the DOT. AR at 91. Plaintiff's counsel also questioned Ms. Spencer which jobs would be eliminated from each hypothetical, if an individual needed to alternate standing for thirty (30) minutes with sitting for thirty (30) minutes. *Id.* Ms. Spencer testified that regarding hypothetical one, hand packager and machine packager would remain, but cleaner II would be eliminated; regarding hypothetical two, housekeeper would be eliminated, and router and retail worker[1] would remain; and all jobs from the third hypothetical would remain. *Id.* at 91–

---

[1] The transcript notes this job as "marker"; however, the third job listed by Ms. Spencer

- 6 -

92.

Ms. Spencer testified that the document preparer position from the third hypothetical had a reasoning level three (3), language level two (2), and math level one (1). *Id.* at 93. When questioned regarding a person with a third grade education, Ms. Spencer noted that the hypothetical was for a person with a reading level from third to fifth grade. *Id.* Ms. Spencer also testified that in the state of Arizona, there were thirty-three (33) addresser jobs available, twenty-six (26) tube operator positions, and 800 document preparer positions. *Id.* at 94.

## II. STANDARD OF REVIEW

The factual findings of the Commissioner shall be conclusive so long as they are based upon substantial evidence and there is no legal error. 42 U.S.C. §§ 405(g), 1383(c)(3); *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). This Court may "set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted); *see also Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014).

Substantial evidence is "'more than a mere scintilla[,] but not necessarily a preponderance.'" *Tommasetti*, 533 F.3d at 1038 (quoting *Connett v. Barnhart*, 340 F.3d 871, 873 (9th Cir. 2003)); *see also Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014). Further, substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). Where "the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Tackett*, 180 F.3d at 1098 (citing *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992)); *see also Massachi v. Astrue*, 486 F.3d

---

in response to the original hypothetical was retail worker. The Court believes there was an error in transcription.

1149, 1152 (9th Cir. 2007). Moreover, the court may not focus on an isolated piece of supporting evidence, rather it must consider the entirety of the record weighing both evidence that supports as well as that which detracts from the Secretary's conclusion. *Tackett*, 180 F.3d at 1098 (citations omitted).

**III. ANALYSIS**

***A.  The Five-Step Evaluation***

The Commissioner follows a five-step sequential evaluation process to assess whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4). This process is defined as follows: Step one asks is the claimant "doing substantial gainful activity[?]" If yes, the claimant is not disabled; step two considers if the claimant has a "severe medically determinable physical or mental impairment[.]" If not, the claimant is not disabled; step three determines whether the claimant's impairments or combination thereof meet or equal an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App.1. If not, the claimant is not disabled; step four considers the claimant's residual functional capacity and past relevant work. If claimant can still do past relevant work, then he or she is not disabled; step five assesses the claimant's residual functional capacity, age, education, and work experience. If it is determined that the claimant can make an adjustment to other work, then he or she is not disabled. 20 C.F.R. § 404.1520(a)(4)(i)-(v).

In the instant case, the ALJ found that Plaintiff "has not engaged in substantial gainful activity since September 14, 2015, the application date (20 CFR 416.971 *et seq.*). AR at 25. At step two of the sequential evaluation, the ALJ found that "[t]he claimant has the following severe impairments: degenerative joint disease status post right knee surgery; obesity; borderline intellectual functioning; anxiety disorder; affective disorder (20 CFR 416.920(c))." *Id.* The ALJ further found that "[t]he claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926)." *Id.* Between step three (3) and four (4), the ALJ

found "that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) including lifting up to 5 pounds frequently and up to 10 pounds occasionally, sitting up to 6 hours total in an 8-hour workday, and standing/walking up to 2 hours total in and [sic] 8-hour workday, with the following restrictions: the claimant could occasionally climb ramps or stairs but never ladders, ropes or scaffolds[;] [t]he claimant could occasionally kneel crawl or crouch[;] [t]he claimant could frequently handle and feel with her right non-dominant hand[;] [t]he claimant is able to understand, remember and carry out simple instructions, make simple work related decisions, respond appropriately to supervisors, co-workers, work situations and deal with routine changes at work but the work should not require beyond third to fifth grade level reading, writing and math[;] [t]he claimant could have occasional superficial contact with co-workers and supervisors[;] [t]he claimant should have none to minimal contact with the public." *Id.* at 31. At step four (4) the ALJ determined that "[t]he claimant is unable to perform any past relevant work (20 CFR 416.965)." *Id.* at 43. As such, after "[c]onsidering the claimant's age, education, work experience, and residual functional capacity, [the ALJ found that] there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a))." *Id.* at 44.

Plaintiff asserts that the ALJ erred in her finding that Plaintiff has a "Limited Education" rather than a "Marginal Education"; in failing to provide evidence of other work that exists in significant numbers; in failing to adequately explain or consider discrepancies between the vocational expert's testimony and the DOT; and in failing to consider substantial evidence of Plaintiff's impairments. Pl.'s Opening Br. (Doc. 14) at 2, 15–24.

### *B.     Limited Education Finding*

Plaintiff asserts that the ALJ applied an improper legal standard to determine that Plaintiff had a limited, as opposed to a marginal education. Pl.'s Opening Br. (Doc. 14) at 15–16. Plaintiff further asserts that this error "was harmful at Step Five in the

sequential evaluation required under 20 CFR 416.920(a) in considering whether Plaintiff has the residual functional abilities to meet the requirements of other work in the national economy[.]" *Id.* at 16. Defendant argues that the ALJ reasonably considered the record in conjunction with the instructions contained within the Code of Federal Regulations and concluding that Plaintiff had limited education.

Section 416.964(b), Code of Federal Regulations, Title 20, defines marginal and limited education as follows:

> *Marginal education.* Marginal education means ability in reasoning, arithmetic, and language skills which are needed to do simple, unskilled types of jobs. We generally consider that formal schooling at a sixth grade level or less is a marginal education.
>
> *Limited education.* Limited education means ability in reasoning, arithmetic, and language skills, but not enough to allow a person with these educational qualifications to do most of the more complex job duties needed in semi-skilled or skilled jobs. We generally consider that a seventh grade through the eleventh grade level of formal education is a limited education.

20 CFR § 416.964(b)(2)–(3).[2] In light of Plaintiff's special education classes, the ALJ found that she possessed a limited education rather than placing her with a high school education or higher pursuant to the regulations. AR at 44. Additionally, Plaintiff's prior work level included semi-skilled work, such as a sales clerk and hotel clerk. *See id.* at 43, 74, 77, 85–86, 101–05. Plaintiff's argument is based upon her testing at a third to fifth grade level falling within the definition of *marginal education*; however, the ALJ added this limitation in her hypotheticals to the VE. Pl.'s Opening Br. (Doc. 14) at 15; AR at 85–88. Moreover, even if the ALJ's classification was in error, the Medical Vocational Guidelines (the "Grids"), 20 C.F.R. Pt. 404, Subpt. P, App. 2, do not direct a finding of disability in light of Plaintiff's age, education, and experience. Rule 201.25 of the Grids directs the adjudicator to Rule 201.00(h) when considering a younger

---

[2] Section 416.964(b)(4), Title 20, Code of Federal Regulations, defines high school education and above, which encompasses formal schooling through the 12th grade or above.

- 10 -

individual (age 18–44); with limited or less education; skilled or semiskilled previous work experience, with skills not transferable. Rule 201.00(h) of the Grids provides in relevant part:

> (2) For individuals who are under age 45, age is a more advantageous factor for making an adjustment to other work. It is usually not a significant factor in limiting such individuals' ability to make an adjustment to other work, including an adjustment to unskilled sedentary work, even when the individuals are unable to communicate in English or are illiterate in English.
>
> (3) nevertheless, a decision of "disabled" may be appropriate for some individuals under age 45 (or individuals age 45 – forty-nine for whom rule 201.17 does not direct decision of disabled) who do not have the ability to perform a full range of sedentary work. However, the inability to perform a full range of sedentary work does not necessarily equate with a finding of "disabled." Whether an individual will be able to make an adjustment to other work requires an adjudicative assessment of factors such as the type and extent of the individual's limitations or restrictions and the extent of the erosion of the occupational base. It requires an individualized determination that considers the impact of the limitations or restrictions on the number of sedentary, unskilled occupations or the total number of jobs to which the individual may be able to adjust considering his or her age, education and work experience, including any transferable skills or education providing for direct entry into skilled work.
>
> (4) "sedentary work" represents a significantly restricted range of work, and individuals with a maximum sustained work capability limited to sedentary work have very serious functional limitations. Therefore, as with any case, a finding that an individual is limited to less than the full range of sedentary work will be based on careful consideration of the evidence of the individuals medical impairment(s) and the limitations and restrictions attributable to it. Such evidence must support the finding that the individual's residual functional capacity is limited to less than the full range of sedentary work.

The ALJ considered the record and properly relied on the VE Spencer's testimony in determining whether other jobs existed in the national economy for which Plaintiff could perform. Moreover, the positions proffered by VE Spencer were all unskilled. *See* AR at 88–89. Accordingly, the ALJ did not err in finding Plaintiff had limited education.

### *C. Evidence of Other Work*

Plaintiff argues that the ALJ did not sufficiently clarify Plaintiff's RFC for reading, and causing VE Spencer's testimony regarding Plaintiff's ability to meet the requirements of the Document Preparer job to be uncertain. Pl.'s Opening Br. (Doc. 14) at 19. Plaintiff further argues, that without the ability to perform the Document Preparer job, an insufficient number of jobs exist in the national economy that she could perform. *Id.* at 20. Defendant asserts that the lowest test results in the record support Plaintiff's reading ability at a mid-fourth to mid-fifth grade level, and as such the ALJ properly relied on VE Spencer's testimony. Def.'s Response (Doc. 15) at 9.

"There is no bright-line test to determine what constitutes a 'significant number' of jobs in the local or national economy." *Gaston v. Comm'r of Soc. Sec. Admin.*, 577 Fed.Appx. 739, 742 (9th Cir. 2014) (citing *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 528 (9th Cir. 2014)). The Social Security Act provides in relevant part that:

> [A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A); *id.* § 1382c(a)(3)(B). The Ninth Circuit Court of Appeals has recognized that "[t]he statute in question indicates that the 'significant number of jobs' can be *either* regional jobs (the region where a claimant resides) *or* in several regions of the country (national jobs)." *Beltran v. Astrue*, 700 F.3d 386, 389-90 (9th Cir. 2012) (citing 42 U.S.C. § 423(d)(2)(A)) (emphasis in original). The *Beltran* court went on to state that "[i]f we find *either* of the two numbers 'significant,' then we must uphold the ALJ's decision." *Id.* at 390 (citing 42 U.S.C. § 423(d)(2)(A)) (emphasis in original). The

*Beltran* court determined that 135 jobs regionally or 1,680 jobs nationally was not significant. *Id.* at 390-91. More recently, however, the Ninth Circuit Court of Appeals has upheld 2,500 jobs in the state of California and 25,000 jobs nationally as significant. *Gutierrez*, 740 F.3d at 527-29. Further, the *Gutierrez* court reiterated that "[i]t does not matter whether – (1) Work exists in the immediate area in which you live; (2) A specific job vacancy exists for you; or (3) You would be hired if you applied for work." *Gutierrez*, 740 F.3d at 525 (citing 20 C.F.R. § 416.996(a)).

The ALJ's hypothetical posed to VE Spencer expressly stated that "the work should not require beyond three to fifth grade level reading, writing and math." AR at 86. In determining this limitation, the ALJ considered a 2001 Pima Vocational High School Psychoeducational Report, as well as 2013 psychological testing performed by Paul Simpson, Ed.D. *Id.* at 429–40, 467–82, 496–500, 1173–76, 1184–91. The 2001 report found Plaintiff's reading decoding and comprehension skills at a mid-fourth to mid-fifth grade level overall, and her spelling and written expressive skills were a late fourth to early fifth grade level. *Id.* at 497. Dr. Simpson summarized Plaintiff's "general cognitive ability, as estimated by the WAIS-IV, [a]s in the low average range (FSIQ = 82)[;] . . . general verbal comprehension abilities were in the average range (VCI = 93), and her general perceptual reasoning abilities were in the low average range (PRI = 84)." *Id.* at 477. In response to the ALJ's hypothetical regarding sedentary work, VE Spencer provided the available jobs of document preparer, addresser, and tube operator. *See id.* at 88–89.

Plaintiff's counsel asked regarding the reasoning, language, and math numbers for document preparer, which VE Spencer testified were levels three, two, and one respectively. *Id.* at 93. When Plaintiff's counsel asked if a person with a third grade reading level could perform a job that requires reasoning level three, VE Spencer clarified that the hypothetical directed third to fifth grade reasoning level, and as such Plaintiff was capable of performing such a job. *Id.* Moreover, the evidence does not support Plaintiff's assertion that she could not perform the document preparer job

1  because it requires Language Level 2.[3]  The ALJ included all of Plaintiff's limitations, as determined by her analysis of the record, in the hypothetical to VE Spencer, and was entitled to rely on the VE's answers regarding the work available. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1217–18 (9th Cir. 2005).

### D. *Discrepancies Between VE Testimony and DOT*

Plaintiff asserts that the ALJ erred in failing to reconcile alleged conflicts between VE Spencer's testimony and the DOT. Opening Br. (Doc. 14) as 21. Defendant contends that there was no inconsistency with VE Spencer's testimony. Response (Doc. 15) at 11–12.

"[T]he *Dictionary* refers to 'occupations,' not to specific jobs[;] '[o]ccupation' is a broad term that includes 'the collective description' of 'numerous jobs' and lists 'maximum requirements' of the jobs as 'generally performed.'" *Gutierrez v. Colvin*, 844 F.3d 804, 807 (9th Cir. 2016) (citing SSR 00-4P, 2000 WL 1898704, at *2–3). "For a difference between an expert's testimony and the *Dictionary's* listings to be fairly characterized as a conflict, it must be obvious or apparent." *Id.* at 808. "This means that the testimony must be at odds with the *Dictionary's* listing of job requirements that are essential, integral, or expected." *Id.*

As discussed in Section III.C, *supra*, VE Spencer's testimony was based upon the ALJ's hypothetical and sufficiently clear to delineate available jobs. As such, the ALJ did not err.

---

[3] Language Level 2 is described as follows:

> READING: Passive vocabulary of 5,000-6,000 words. Read at rate of 190-215 words per minute. Read adventure stories and comic books, looking up unfamiliar words in dictionary for meaning, spelling, and pronunciation. Read instructions for assembling model cars and airplanes.
>
> WRITING: Write compound and complex sentences, using cursive style, proper end punctuation, and employing adjectives and adverbs.
>
> SPEAKING: Speak clearly and distinctly with appropriate pauses and emphasis, correct punctuation, variations in word order, using present, perfect, and future tenses.

DOT 249.587-018, *available at* 1991 WL 672349.

### E. *Substantial Evidence*

Plaintiff asserts that "[t]he ALJ failed to consider substantial evidence on record which supports an allowance." Pl.'s Opening Br. (Doc. 14) at 22–23. Plaintiff is seeking for an Order directing the ALJ to reweigh the evidence; however, this is not the standard. Where "the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Tackett*, 180 F.3d at 1098 (citing *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992)); *see also Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007). Here, the ALJ considered all of the evidence before her, and made findings accordingly. Understandably, the Plaintiff does not agree with the ALJ's decision; however, she did not commit legal error.

## V. CONCLUSION

Based upon the foregoing, the Court affirms the ALJ's decision. Accordingly, IT IS HEREBY ORDERED that:

1) Plaintiff's Opening Brief (Doc. 14) is DENIED;
2) The Commissioner's decision is AFFIRMED; and
3) The Clerk of the Court shall enter judgment, and close its file in this matter.

Dated this 28th day of September, 2018.

*[signature]*
Honorable Bruce G. Macdonald
United States Magistrate Judge